IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NITE IZE, INC., a Colorado corporation,   )
           )
       Plaintiff,     )
           )   Civil Action No. _____
           )
vs.           )
           )   **JURY TRIAL DEMANDED**
           )
KANE & MCHENRY ENTERPRISES,   )
LLC D/B/A CELLHELMET, a    )
Pennsylvania limited liability company,   )
           )
       Defendant.    )


## COMPLAINT

Plaintiff Nite Ize, Inc. ("Nite Ize") complains and alleges against Kane & McHenry Enterprises, LLC d/b/a CellHelmet as follows:

### I.     THE PARTIES

1.    Nite Ize is a Colorado corporation with its principal place of business at 5660 Central Avenue, Boulder, Colorado. Nite Ize is a design and development company that designs and develops various innovative consumer products. A category of those products is the STEELIE® products. The STEELIE® products are various sized mounts, generally used for handheld or mobile communication or data devices. They include a disc for attachment to a rounded surface so the device may be held via magnetism and friction in a variety of positions.

The STEELIE® products use the "STEELIE® Ball Mount" and the "Socket" to support mobile devices and tablets so users can see their screens without holding the device or tablet.

2.      Nite Ize's STEELIE® Line of Products are widely popular, instantly recognizable, and highly regarded by the public and by consumers for their distinctive designs, exceptional quality, beautiful style, and superior craftsmanship, and they have become exclusively associated with the Nite Ize name.  Two of the most popular and recognizable Nite Ize products are the STEELIE® Dash Mount Kit (also known as the STEELIE® Car Mount Kit) and the STEELIE® Vent Mount Kit, as well as their components.

3.      Upon information and belief, Kane & McHenry Enterprises, LLC ("Kane & McHenry") is a Pennsylvania limited liability company doing business as CellHelmet ("CellHelmet" or "Defendant").  CellHelmet has registered "cellhelmet" in Pennsylvania as a "Fictitious Name."  Upon information and belief, Defendant's principal place of business is 10475 Perry Highway, Suite 102G, Wexford, Pennsylvania 15090.  Defendant may be served with process at 10475 Perry Highway, Suite 102G, Wexford, Pennsylvania 15090.

4.      CellHelmet imports, uses, offers to sell, sells, markets, and/or distributes knock-offs of the STEELIE® Dash Mount Kit and STEELIE® Vent Mount Kit that violate Nite Ize's intellectual property rights and has engaged in other wrongful acts set out in this Complaint.

## II.      JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1338(a) and (b), 1367 (a), and 15 U.S.C. 1121(a).  This suit arises under the patent and trademark laws of the United States, including 35 U.S.C. §§171 and 271 and 15 U.S.C. §§1114 and 1125, and substantially related claims. Subject matter jurisdiction of state law claims is proper because the

Court has supplemental jurisdiction over them and diversity jurisdiction over them.   On information and belief, the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      This Court has personal jurisdiction over CellHelmet.   Upon information and belief, CellHelmet has a regular and established place of business in Pennsylvania.   Upon information and belief, CellHelmet is a limited liability company that is registered under the laws of Pennsylvania.

7.      Venue is proper pursuant to 28 U.S.C. §§1391(b)(2) and (c)(2), and 1400.

### III.   NITE IZE'S STEELIE PRODUCTS INTELLECTUAL PROPERTY

8.      The inventive concepts underlying the STEELIE® Line of Products were developed and patented by Frank Vogel, a United States citizen who resides in Boulder County, Colorado.   Mr. Vogel developed his innovative holder and mount for mobile devices and immediately branded the products implementing this invention with the name "STEELIE®." Mr. Vogel then became part owner of a company called Blackglass, LLC ("Blackglass") which developed the three precursors to the STEELIE® products: the STEELIE® Car Mount, the STEELIE® HobKnob, and the STEELIE® Pedestal.

9.      In December 2012, Nite Ize acquired all of the rights to the intellectual property associated with the STEELIE® Products, including all invention rights, patent rights, trademark rights, trade dress rights, goodwill, and trade secrets.   Since then, Nite Ize has significantly increased the distribution, sales, and product offerings of the STEELIE® Line of Products, expanding the three original Blackglass products to a multitude of STEELIE® products that more completely meet the needs of consumers.   Additionally, Nite Ize re-engineered and

redesigned the original STEELIE® products, combining the original STEELIE® design with innovations like the STEELIE® Vent Mount Kit.

10.     STEELIE® products have won several awards, including:

- CTIA ("Cellular Telephone Industries Association") 2015 Best of Show for the STEELIE® Desk & Dash System
- Best of CTIA 2014 for the STEELIE® Car Mount Kit
- Hardware Retailing 2013 for the STEELIE® Car Mount Kit

11.     STEELIE® products are comprised of a multitude of patented technologies and have established such popularity that magnetic holders that fix mobile devices to a surface using a steel ball that magnetically interacts with a socket are readily identified by consumers as a STEELIE® product originating from Nite Ize.

**A.     Nite Ize's United States Utility Patent No. 9,765,921**

12.     On September 19, 2017, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Utility Patent No. 9,765,921 ("'921 Patent"), entitled "MULTI-POSITIONAL MOUNT FOR PERSONAL ELECTRONIC DEVICES WITH A MAGNETIC INTERFACE" to Nite Ize after a full and fair examination. *See* Ex. A. The '921 Patent claims a priority date of the filing date of May 31, 2012, based on application No. 14/526,350 which is a continuation of application No. 13/485,894 and Provisional Application No. 61/491,640, filed May 31, 2011. *Id*.

13.     Nite Ize is the owner of the entire right, title, and interest in and to the '921 Patent by assignment and has the exclusive right to sue for infringement and recover damages for all past, present, and future infringement.

14.     The '921 Patent describes and generally claims a stand assembly for holding handheld electronic devices in a multitude of positions or locations having a first section with a curved end that magnetically attaches to a second section having an indentation and having a friction producing material to help secure the first section and second section together.  The second section is also either contiguous with a portable electronic device, a carrying case, or other item that facilitates the connection between the first section, second section, and the handheld electronic device.

15.     By way of example only, Claim 1 of the '921 Patent recites

A stand assembly for laying stably on a flat surface comprising:

a first section shaped at one end to lay stably on the flat surface and shaped on another end with a curved surface, said curved surface of said first section constructed of a magnetic material; and

a second section having a first surface, said first surface having an indentation, said indentation having a curved shape, said second section having magnetic material holding the first and second sections together, the magnetic material of the second section surrounding the curved surface when the first and second sections are together, wherein the magnetic material of the second section that holds said first and said second sections together has a ring shape, the indentation being in a center of the ring shape, wherein the second section includes a first piece of high-friction material, the first piece of high-friction material disposed of in the indentation of said second section and the magnetic

material positioned such that the magnetic material of the second section

radially surrounds the first piece of high-friction material.

16.     Nite Ize's STEELIE® Dash Mount Kit and STEELIE® Vent Mount Kit embody one or more claims of the '921 Patent.

17.     Defendant has had actual notice of the '921 Patent since at least May 8, 2017.

18.     The sales of the Nite Ize's STEELIE® Dash Mount Kit and STEELIE® Vent Mount Kit have been continually increasing, showing a growth of awareness and their desirability.

19.     The efforts of Nite Ize in creating the STEELIE® Dash Mount Kit and STEELIE® Vent Mount Kit of the highest quality, and the efforts of Nite Ize in promoting the products, enabled the sales of these products to reach a lucrative level.

**B.     Nite Ize's Trade Dress**

20.     Nite Ize relies on the distinctive material makeup, color, shape, and visual characteristics as a way for the STEELIE® Dash Mount Kit and STEELIE® Vent Mount Kit as well as Nite Ize to be identified by retailers and retail customers.   Indeed, on more recent STEELIE® packaging, Nite Ize informs persons that "[t]the distinctive shapes, styles, configuration and overall appearance of all Nite Ize products are trademarks of Nite Ize, Inc." Figures 1 – 8 are images depicting the STEELIE® Product Trade Dress.   The forms of the STEELIE Product Trade Dress are further defined below.

21.     In addition to marketing and selling Nite Ize's STEELIE® products in brick and mortar retail stores, Nite Ize has developed a distinctive and interactive website at

http://www.niteize.com where retail customers have had access to Nite Ize's STEELIE® products.

22.     Nite Ize is the exclusive owner of the Nite Ize STEELIE® Trade Dress and at no time authorized CellHelmet or any parent, subsidiary, or agent of CellHelmet to use a mark or trade dress that is substantially or confusingly similar.

## IV.     DEFENDANT'S WRONGFUL ACTIONS

23.     Upon information and belief, CellHelmet calls its infringing product that mounts on car vents the "360° Magnetic Mount – Car Mounting System – Vent Clip" (referenced hereafter as "Vent Mount Infringing Product"). To date CellHelmet has sold the Vent Mount Infringing Products in two versions: the First Vent Mount Infringing Product and the Second Vent Mount Infringing Product.   Upon information and belief, CellHelmet calls its infringing products that mount to the dash or windshield the "360° Magnetic Mount – Car Mounting System" (referenced hereafter as "Car Mount Infringing Product").   The First Vent Mount Infringing Product, the Second Vent Mount Infringing Product, and the Car Mount Infringing Product shall be collectively referred to as the "Infringing Products."

### A.     CellHelmet's Vent Mount Infringing Product

24.     To date CellHelmet has sold the Vent Mount Infringing Products in two versions: the First Vent Mount Infringing Product and the Second Vent Mount Infringing Product.

#### 1.     CellHelmet's Copycat First Vent Mount Infringing Product

25.     Prior to May 8, 2017 Nite Ize found the Defendant's advertisement on the website Cellhelmet.com to sell its First Vent Mount Infringing Product.  On information and belief, the

website Cellhelmet.com is controlled by the Defendant.  As shown in Figure 1, the Defendant's advertisement showed the First Vent Mount Infringing Product, which was an identical copy of the STEELIE® Vent Mount Kit but with the "CELLHELMET" mark rather than "STEELIE" mark.[1]

**Figure 1.**



26.     On May 1, 2017, Nite Ize ordered the First Vent Mount Infringing Product from the website Cellhelmet.com.  *See* Ex. F.  The product Nite Ize received was an identical product to the STEELIE® Vent Mount but with the "CELLHELMET" mark inscribed on the product rather than the "STEELIE" mark; the product received in the Defendant's packaging is shown in Figure 2.[2]  Upon information and belief, Nite Ize received the Defendant's First Vent Mount Infringing Product from the Defendant's controlled facility or a distribution facility directed by the Defendant to distribute the Defendant's First Vent Mount Infringing Product.  *See* Ex. F.

---

[1] In Figure 1, the Nite Ize STEELIE® Vent Mount Kit used in Nite Ize's advertisements is shown on the left.  CellHelmet's First Vent Mount Infringing Product advertisement, obtained from CellHelmet's website prior to May 8, 2017, is depicted on the right.
[2] In Figure 2, the Nite Ize STEELIE® Vent Mount is shown on the left.  CellHelmet's First Vent Mount Infringing Product that was obtained by Nite Ize from CellHelmet's website prior to May 8, 2017, is depicted on the right.

*Figure 2.*

 

27.     On May 8, 2017, counsel for Nite Ize sent to CellHelmet a first cease and desist letter titled "Infringement of Patents and Trade Dress of Nite Ize, Inc. STEELIE® products" demanding that the Defendant cease and desist all sales of its infringing vent mount product. *See* Ex. B.  Among other things, Nite Ize informed Defendant that its First Vent Mount Infringing Product mimics Nite Ize's STEELIE® Vent Mount Kit's Trade Dress.[3]

28.     The Defendant temporarily removed its First Vent Mount Infringing Product after receiving the May 8, 2017 cease and desist letter.  Defendant was then sent a second cease and desist letter that addressed, among other things, its Car Mount Infringing Product's trade dress and patent violations on August 18, 2017.  *See* Ex. C.  Sometime on or around August 18, 2017, the Defendant made changes to the First Vent Mount Infringing Product.

---

[3]     Defendant was sent cease and desist letter that only addressed its Vent Mount Infringing Product's trade dress violations, among other things, on May 8, 2017.

**2.      *CellHelmet's Second Vent Mount Infringing Product***

29.      As seen in Figures 3 – 5, below, the Second Vent Mount Infringing Product is virtually identical to the STEELIE® Vent Mount Kit's shape, size, and colors.[4]

*Figure 3.*




*Figure 4.*




*Figure 5.*




---

[4]      In Figures 3 – 5, the Nite Ize STEELIE® Vent Mount Kit is shown on the left of the corresponding Second Vent Mount Infringing Product.

**B.** **CellHelmet's Car Mount Infringing Product**

30.     As seen in Figures 6 – 8, below, the Car Mount Infringing Product is virtually identical to the STEELIE® Dash Mount Kit's shape, size, and colors.[5]

*Figure 6.*

    

*Figure 7.*

    

---

[5]     In Figures 6 – 8, the Nite Ize STEELIE® Dash Mount Kit product is shown on the left of CellHelmet's corresponding Infringing Product.  CellHelmet's Car Mount Infringing Product knocks off the design, sizes, and colors of Nite Ize's STEELIE® Dash Mount Kit.

*Figure 8.*

 

31.     Defendant knew or should have known of Nite Ize's intellectual property rights. A search would have revealed Nite Ize's '921 Patent, registered trademark, and trade dress. Moreover, Defendant knew or should have known about Nite Ize's intellectual property rights by the characteristics and trade dress of the STEELIE® Dash Mount Kit and STEELIE® Vent Mount Kit.

32.     Upon information and belief, Defendant's infringement upon Nite Ize's intellectual property rights was knowing, willful, and intentional at all times relevant to this Complaint.  However, it is clear that Defendant's knowledge, willfulness, and intent to infringe by selling, marketing, and/or distributing its Vent Mount Infringing Product existed no later than May 8, 2017 and its Car Mount Infringing Product existed no later than August 18, 2017.  *Supra* n. 4.

33.     Defendant continues to make, use, offer to sell, and sell the Infringing Products and continues to infringe upon Nite Ize's intellectual property rights.

34.     Despite such notice directly from Nite Ize and after ample time for Defendant to cease its infringing activities, Defendant has continued to infringe on Nite Ize's intellectual property rights.

35.     At the time of the filing of this Complaint, Defendant offers Infringing Products for sale to Colorado consumers.

36.     The Infringing Products' sizes, colors, shapes, and material compositions are strikingly similar to their STEELIE® product counterparts. *See* Figures 1 – 8. Such designs are virtually identical to their respective STEELIE® product's design and appearance but of lesser quality.

37.     The Car Mount Infringing Product and Vent Mount Infringing Product each have a stand assembly that is virtually identical to Nite Ize's STEELIE® Dash Mount Kit and STEELIE® Vent Mount Kit, respectively, claimed in '921 Patent.

38.     Defendant has used the trade dress of the STEELIE® Dash Mount Kit and STEELIE® Vent Mount Kit after Nite Ize developed, advertised, sold, and distributed for sale Nite Ize's STEELIE® Dash Mount Kit and STEELIE® Vent Mount Kit and had established significant recognition and reputation for the products' design and quality.

39.     Defendant has used the trade dress of the STEELIE® Dash Mount Kit and STEELIE® Vent Mount Kit without permission, authority, or license from Nite Ize, and on information and belief, such actions were taken willfully, intentionally, and in bad faith with full knowledge of Nite Ize's intellectual property rights and with the intention to trade off of, and benefit from, Nite Ize's reputation and the goodwill it has created among its customers.

## V.    CAUSES OF ACTION

### COUNT I

**Infringement of the '921 Patent in Violation of 35 U.S.C. §271**

40.    Nite Ize incorporates by reference paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41.    Without authority from Nite Ize, Defendant has, during the term of Nite Ize's '921 Patent, engaged in making, using, and/or selling in the United States and/or have imported into the United States the Infringing Products, which infringe one or more claims of Nite Ize's '921 Patent.

42.    Nite Ize is informed and believes and alleges thereon that without authority of Nite Ize, Defendant has actively induced infringement of Nite Ize's '921 Patent.  Nite Ize is informed and believes and alleges thereon that Defendant has distributed or supplied to other entities or have entered into contracts or other arrangements with other entities that have sold the Infringing Products in the United States.

43.    The Second Vent Mount Infringing Product, by way of example, infringes claim 2 of the '921 Patent as shown in Chart 1[6], below:

---

[6] See Exhibit E for a complete claim chart of the Vent Mount Infringing Product that includes claims 2 and 5.

| Patent No. '921 Claim 2 | Chart 1 Visual Description | Explanatory Description of Infringing Product |
|---|---|---|
| A stand assembly for laying stably on a flat surface comprising: |  Combined First Section and Second Section "Stand" | The claim preamble is not limiting. |
| a first section shaped at a first end with a curved surface, |  First End   Curved surface   First Section | The first section of the Second Vent Mount Infringing Product is referenced hereafter as the "Ball Mount."  As shown on the left, the Ball Mount includes a first end on the top of the Ball Mount.  The first end of the Ball Mount is topped with a curved surface resembling a ball. |
| said curved surface of said first section constructed of a magnetic material; |  Magnetic Material | The curved surface of the top of the Ball Mount is constructed of a magnetic material.  The CellHelmet "Ball Mount" features a magnetic material that combines with the magnetic interface of the "Socket." |
| and a second section having a first surface, said first surface having an indentation, |  Indentation   First Surface   Second Section | The Second Vent Mount Infringing Product has a second section that is described herein as the "Socket." The Socket (shown on the left) has a front surface with a circular indentation such that it can combine with the round surface of the Ball Mount. |

| Patent No. '921 Claim 2 | Chart 1 Visual Description | Explanatory Description of Infringing Product |
|---|---|---|
| said indentation having a curved shape complementary to the curved surface of said first section, said second section constructed of magnetic material holding the first and second sections together, |  | As shown on the left, the indentation on the front surface of the Socket is capable of receiving the curved surface of the Ball Mount. |
| the magnetic material of the second section surrounding the curved surface when the first and second sections are together, wherein the magnetic material of the second section has a ring shape, | Ring-Shaped Magnetic Material  | As shown on the left, the indentation, in the shape of a ring, is the magnetic material that combines with the first section's Ball Mount. |
| wherein the second section includes a friction producing material, | **Friction Producing Material**  | As shown on the left, the center of the socket acts in a manner that makes contact with the Ball Mount creating an additional point of friction along with the friction created by the ring shaped magnetic material. |

| Patent No. '921 Claim 2 | Chart 1 Visual Description | Explanatory Description of Infringing Product |
|---|---|---|
| the friction producing material disposed of in the indentation of said second section and the magnetic material positioned such that the magnetic material of the second section radially surrounds the friction producing material. | Friction Producing Material (disposed in indentation) — Magnetic Material (also creates indentation that radially surrounds Friction Producing Material)  | As shown on the left the friction producing material (metal or metallic material) of the Socket is disposed of in the indentation of the front surface of the Socket. |

44.     Nite Ize reserves the right to assert that the First Vent Mount Infringing Product infringes the '921 Patent in the event Nite Ize discovers that Defendant imported, offered for sale or sold the First Vent Mount Infringing Product after the relevant dates related to the '921 Patent or Defendant in any other way infringed the '921 Patent with respect to the First Vent Mount Infringing Product.

45.     The Car Mount Infringing Product, by way of example, infringes claim 1 of the '921 Patent as shown in Chart 2[7], below:

---

[7] See Exhibit D for a complete claim chart of the Car Mount Infringing Product that includes claims 1, 2, and 5.

| Patent No. '921<br>Claim 1 | Chart 2<br>Visual Description | Explanatory Description of<br>Infringing Product |
|---|---|---|
| A stand assembly for laying stably on a flat surface comprising: | <br>**Combined First Section and Second Section "Stand"** | The Car Mount Infringing Product is a stand assembly that includes one "Socket" and one "Ball Mount."  Notably, the CellHelmet advertisement (found and described on CellHelmet's website) shows the components of the Car Mount Infringing Product just as Nite Ize, Inc. describes the components for the Steelie Car Mount found at https://www.niteize.com/product/Steelie-Car-Mount-Kit.asp. The combination of the "Socket" and the "Ball Mount," forms a stand assembly to secure a mobile device to a flat surface including (but not limited to) a vehicle dash. |
| a first section shaped at one end to lay stably on the flat surface and shaped on another end with a curved surface, |  | The first section of the Car Mount Infringing Product is referenced hereafter as the "Ball Mount."  As shown on the left, the Ball Mount includes a first end on the top of the Ball Mount.  The first end of the Ball Mount is topped with a curved surface resembling a ball. |
| said curved surface of said first section constructed of a magnetic material; |  | The curved surface of the top of the Ball Mount is constructed of a magnetic material.  Shown on the left in CellHelmet's product the "Ball Mount" features a magnetic material that combines with the magnetic interface of the "Socket." |

| Patent No. '921 Claim 1 | Chart 2 Visual Description | Explanatory Description of Infringing Product |
|---|---|---|
| and a second section having a first surface, said first surface having an indentation, |  | The Car Mount Infringing Product has a second section that is described herein as the "Socket." The Socket (shown on the left) has a front surface with a circular indentation such that it can combine with the round surface of the Ball Mount. |
| said indentation having a curved shape, said second section having magnetic material holding the first and second sections together, |  | As shown on the left, the indentation on the front surface of the Socket is capable of receiving the curved surface of the Ball Mount. |
| the magnetic material of the second section surrounding the curved surface when the first and second sections are together, wherein the magnetic material of the second section that holds said first and said second sections together has a ring shape, |  | As shown on the left, the indentation, in the shape of a ring, is the magnetic material that combines with the first section's Ball Mount. |

| Patent No. '921<br>Claim 1 | Chart 2<br>Visual Description | Explanatory Description of<br>Infringing Product |
|---|---|---|
| said second section having magnetic material capable of holding said first and said second sections together, | <br>Magnetic Material | As shown on the left, the magnetic material of the Socket is capable of combining with the magnetic material of the magnetic material of the Ball Mount, holding the two sections together.  Further, once the two sections are magnetically held together, the flat surface of the Socket sticks to a phone while the flat surface of the Ball Mount secures to a vehicle dash. |
| the indentation being in a center of the ring shape, wherein the second section includes a first piece of high-friction material, | <br>Ring-shaped Indentation<br>High-Friction Material | As shown on the left, the front surface of the Socket includes a metal or metallic material.  This metal or metallic material is an example of the high friction material described in the claim. |
| the first piece of high-friction material disposed of in the indentation of said second section | <br>High-Friction Material<br>(Disposed of in Indentation) | As shown on the left the high-friction metal or metallic material of the Socket is disposed of in the indentation of the front surface of the Socket. |

| Patent No. '921 Claim 1 | Chart 2 Visual Description | Explanatory Description of Infringing Product |
|---|---|---|
| and the magnetic material positioned such that the magnetic material of the second section radially surrounds the first piece of high-friction material. |  | The metal or metallic material is positioned in the center of the front surface of the Socket. As shown on the left, a portion of the magnetic material of the Socket is raised above the metal or metallic material and further radially surrounds the metal or metallic material. |

46.     Defendant's acts constitute patent infringement in violation of 35 U.S.C. §271.

47.     Upon information and belief, Defendant knew or should have known of Nite Ize's '921 Patent before it engaged in its wrongful acts.  But no later than its receipt of Nite Ize's cease and desist letter, Defendant's infringement of the '921 Patent has been and continues to be willful and intentional and with knowledge of the existence and validity of Nite Ize's '921 Patent.

48.     Defendant's infringement is injuring Nite Ize and causing financial damage to Nite Ize including lost revenue and profit.  Nite Ize has also suffered and will continue to suffer injury to its business, reputation, and goodwill.  Nite Ize is entitled to damages sufficient to compensate it, but no less than a reasonable royalty.

## COUNT II

### Trade Dress Infringement in Violation of 15 U.S.C. § 1125(a)

49.     Nite Ize incorporates by reference paragraphs 1 through 39 of this Complaint as if fully set forth herein.

50.   The STEELIE® Product Trade Dress collectively refers to the STEELIE® Family Trade Dress, the STEELIE® Dash Mount Kit's Trade Dress, and the STEELIE® Vent Mount Kit's Trade Dress, all of which are defined below.

51.   The STEELIE® Family Trade Dress refers to the use of a shiny, metallic-looking ball with a significant amount of the ball showing.

52.   The STEELIE® Dash Mount Kit's Trade Dress (*i.e.* their overall image and appearance) include, but are not limited to the following elements: a shiny, metallic-looking ball with a significant amount of the ball showing, that is secured to a black base that is entirely round and flares outwardly toward the bottom where it attaches to the dash; an entirely round mounted socket that is darker colored on the exterior, with a round, silver disc inside.

53.   The STEELIE® Vent Mount Kit's Trade Dress (*i.e.* their overall image and appearance) include, but are not limited to the following elements: a shiny, metallic-looking ball with a significant amount of the ball showing secured to a black base which can lock to a car vent; the black base having two arms that extend from the base; and a magnetic, rounded socket that is darker colored on the exterior, with a round, silver disc inside.

54.   The STEELIE® Product Trade Dress is a way for the STEELIE® Line of Products and Nite Ize to be identified by retailers as well as customers and potential customers at the point of sale as well as after the point of sale.

55.   None of the three forms of the STEELIE® Product Trade Dress is functional.

56.   Based on, among other things, Nite Ize's extensive and consistent promotion and sales throughout the United States, each category of the STEELIE® Product Trade Dress have acquired distinctiveness and secondary meaning among consumers, identifying the products as

originating from a single source.  Nite Ize has acquired valuable, legally protected rights in each category of the STEELIE® Product Trade Dress.

57.    Nite Ize is the owner of all right and title to each category of the STEELIE® Product Trade Dress.

58.    Defendant has copied each category of Nite Ize's STEELIE® Product Trade Dress by imitating the major design elements and the overall "look and feel" of each category of Nite Ize's STEELIE® Product Trade Dress in violation of Section 43(a) of the Lanham Act, 15 U.S.C. section 1125(a).

59.    Defendant's acts of copying of each category of Nite Ize's STEELIE® Product Trade Dress and their manufacture, importation, and sale of their Infringing Products through interstate commerce are likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, quality, sponsorship, or affiliation of the Infringing Products, and are likely to cause such consumer confusion as to whether Nite Ize has authorized, sponsored, approved, endorsed, or licensed the Infringing Products or whether Defendant is in some way affiliated with Nite Ize. Defendant's actions constitute a false designation of origin that has caused, and are likely to cause, confusion, mistake, and deception, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

60.    Defendant's use of each category of the STEELIE® Product Trade Dress enables Defendant to benefit unfairly from Nite Ize's reputation and success, thereby giving the Infringing Products sales and commercial value they otherwise would not have.

61.    Defendant's actions constitute trade dress infringement and unfair competition in violation of Section 43(a) of the Lanham Act.  15 U.S.C. § 1125(a).

62.     Upon information and belief, Defendant knew, or should have known, of each category of the STEELIE® Product Trade Dress before it engaged in its wrongful acts.  No later than its receipt of Nite Ize's cease and desist letter, sent May 8, 2017, Defendant had actual knowledge of each category of the STEELIE® Product Trade Dress, but it has continued to infringe upon each category of the STEELIE® Product Trade Dress intentionally, willfully, and without regard for Nite Ize's STEELIE® Product Trade Dress.

63.     The Defendant's willful and intentional conduct makes this an exceptional case under 15 U.S.C. section 1117(a).

64.     Defendant's acts have injured Nite Ize and have caused Nite Ize damages, including lost revenue and profit.  Nite Ize has also suffered and will continue to suffer injury to its business, reputation, and goodwill.

## COUNT III

**Violation of the Colorado Consumer Protection Act under C.R.S § 6 – 1 – 105**

65.     Nite Ize incorporates by reference paragraphs 1 through 39 and 50 through 64 of this Complaint as if fully set forth herein.

66.     Defendant, in the course of its business and through its acts as set forth in this Complaint, has engaged in unfair or deceptive trade practices as defined in Colorado Revised Statute section 6 – 1 – 105, including:

a.     knowingly passing off goods as those of another;

b.     knowingly making a false representation as to the source, sponsorship, approval, or certification of goods;

      c.      knowingly making a false representation as to the affiliation, connection, or association with or certification by another;

      d.      knowingly making a false representation as to the characteristics of goods or a false representation of the sponsorship, approval, status, affiliation, or connection of a person therewith.

67.     Defendant's practices significantly impact the public as actual or potential consumers of Defendant's goods.

68.     Defendant's acts cause Nite Ize to suffer injury in the course of its business to a legally protected interest, including to its intellectual property rights, its sales and profits, and its reputation and goodwill.

69.     Upon information and belief, Defendant knew or should have known of Nite Ize's intellectual property rights before it engaged in its wrongful acts. But no later than Defendant's receipt of Nite Ize's cease and desist letters, Defendant committed its violations of the Colorado Consumer Protection Act willfully, knowingly, and intentionally.

## COUNT IV

### Common Law Unfair Competition and Trade Dress Infringement

70.     Nite Ize incorporates by reference paragraphs 1 through 39, 50 through 64, and 66 through 69 of this Complaint as if fully set forth herein.

71.     This is a claim for common law trade dress infringement and common law unfair competition under the laws of the State of Colorado, separately made and joined with substantial and related claims under the United States patent law and the United States trademark law.

72.     Defendant's acts constitute common law trade dress infringement and unfair competition by palming or passing off the Infringing Products to be understood by the consumer

as goods of Nite Ize.  The palming or passing off of the Infringing Products creates a likelihood of confusion in the minds of the public as to the source and approval of Defendant's goods and further creates the impression that Nite Ize is responsible for the design, makeup, and quality of the goods offered for sale by Defendant.  It also tends to dilute the value of Nite Ize's intellectual property that was built up at great expense.

73.     Such acts by Defendant also constitute an attempt to unfairly trade on the goodwill of Nite Ize.  The acts will mislead, confuse, and deceive the purchasing public into mistakenly purchasing Defendant's goods or attributing to such goods an association or affiliation with Nite Ize.

74.     The offering by Defendant of goods bearing a simulation of each category of Nite Ize's STEELIE® Product Trade Dress may create dissatisfaction and resentment among a substantial portion of the purchasing public if the goods are not to the customer's satisfaction. These acts will materially dilute Nite Ize's reputation and damage the goodwill that Nite Ize has created.

75.     Upon information and belief, Defendant knew or should have known of Nite Ize's intellectual property rights before it engaged in its wrongful acts by making, using, offering for sale, and/or selling in the United States and/or have imported into the United States its Vent Mount Infringing Product.  No later than its receipt of Nite Ize's cease and desist letter, dated May 8, 2017, CellHelmet has committed its wrongful acts willfully, knowingly, and intentionally.

76.     Upon information and belief, Defendant knew or should have known of Nite Ize's intellectual property rights before it engaged in its wrongful acts by making, using, offering for

sale, and/or selling in the United States and/or have imported into the United States its Car Mount Infringing Products. No later than its receipt of Nite Ize's cease and desist letter, dated August 18, 2017, CellHelmet has committed its wrongful acts willfully, knowingly, and intentionally.

77.     Defendant's unauthorized use of a confusingly similar designation for its strikingly similar car mount and vent mount kits has caused and is likely to continue to cause confusion, mistake, or to deceive the purchasing public to the damage of Nite Ize.

78.     Defendant has unfairly competed with Nite Ize by the intentional and unauthorized use of Nite Ize's common law trade dress for its confusingly similar products.

79.     Defendant's acts have injured Nite Ize and have caused Nite Ize damages, including lost revenue and profit. Nite Ize has also suffered and will continue to suffer injury to its business, reputation, and goodwill.

## COUNT V

### Unjust Enrichment

80.     Nite Ize incorporates by reference paragraphs 1 through 39, 50 through 64, 66 through 69, and 71 through 79 of this Complaint as if fully set forth herein.

81.     Defendant's acts infringing on Nite Ize's intellectual property, described above, confers a benefit upon Defendant at the expense of Nite Ize. Defendant has wrongfully infringed each category of Nite Ize's STEELIE® Product Trade Dress to solicit and divert consumers. Defendant's acts cause it to reap a profit on Nite Ize's hard work, ingenuity, reputation, expense, and goodwill.

82.     Defendant's acts violate fundamental principles of justice, equity, and good conscience.  It would be unjust for Defendant to retain the benefits of its wrongful conduct.

83.     Defendant's acts have caused it to be unjustly enriched to the detriment of Nite Ize.

## VI.     REQUEST FOR RELIEF

Nite Ize asks that this Court enter judgment in its favor and against Defendant as follows:

1.      that Nite Ize's intellectual property rights are good, valid, and enforceable;

2.      that Defendant infringed on Nite Ize's '921 Patent;

3.      that Defendant's acts constitute statutory and common law trade dress infringement;

4.      that Defendant's acts constitute statutory and common law unfair competition;

5.      that Defendant's acts constitute trade dress infringement in violation of the Lanham Act;

6.      that Defendant's acts constitute wrongful importation;

7.      that Defendant's acts constitute violations of the Colorado Consumer Protection Act;

8.      that Defendant has been unjustly enriched to the detriment of Nite Ize;

9.      that Defendant committed its unlawful acts knowingly, intentionally, and/or willfully;

10.     that Defendant account to Nite Ize for all revenues, profits, gains, savings, and advantages received or realized by Defendant that are attributable to its violations of Nite Ize's intellectual property rights;

11.     that Nite Ize recover from Defendant damages for Defendant's unlawful acts in an amount adequate to compensate Nite Ize, including the following amounts and types of relief:

a.  for Defendant's patent infringement, an amount sufficient to compensate Nite Ize for its damages, but no less than a reasonable royalty, together with interest and costs as fixed by the Court.  Nite Ize also requests that the Court increase the damages awarded to Nite Ize up to three times the amount found or assessed pursuant to law;

b.  for Defendant's trade dress infringement, amounts to include Defendant's profits that it has earned on the Infringing Products, damages sustained by Nite Ize, and a sum up to three times Nite Ize's actual damages;

c.  for Defendant's violation of the Colorado Consumer Protection Act, amounts to include Nite Ize's actual damages and up to three times the amount of Nite Ize's actual damages;

d.  disgorgement or other appropriate relief to compensate Nite Ize for Defendant's unjust enrichment; and

e.  for all claims, the fullest amount of damages to which Nite Ize is entitled.

12.  that Nite Ize recover reasonable attorneys' fees and costs;

13.  that Nite Ize recover all interest to which it is entitled, including pre- and post-judgment interest in the maximum amount allowed by law;

14.  that Defendant delivers for destruction, or show proof of destruction of, all Infringing Products, labels, signs, prints, packages, wrappers, and any other materials in its possession or control that depict or reference the confusingly similar trade dress to any category of the STEELIE® Product Trade Dress and all materials used for making or reproducing those marks and material that shows a product or products infringing Nite Ize's '921 Patent.

15.  that Nite Ize recover from Defendant an amount sufficient to conduct a corrective advertising campaign as is appropriate to correct the actual and likely confusion caused by Defendant's infringing and wrongful conduct;

16.    that Nite Ize recover all other relief, at law and equity, to which it is entitled.

### VII.    JURY DEMAND

Nite Ize demands a trial by jury.


Dated November 21, 2017

Respectfully submitted,


By:    s/ David J. Berardinelli
David J. Berardinelli, PA I.D. No. 79204
DEFOREST KOSCELNIK YOKITIS & BERARDINELLI
436 Seventh Ave., 30th Fl.
Pittsburgh, PA  15219
Phone:  412-227-3100
Fax:     412-227-3130
Email:  berardinelli@deforestlawfirm.com


Kenneth G. Parker (*Pro hac vice* to be filed,
    California Bar No. 182911)
HAYNES AND BOONE, LLP
600 Anton Blvd., Suite 700
Costa Mesa, CA 92626
Phone:  (949) 202-3014
Fax:  (949) 202-3114
Email: kenneth.parker@haynesboone.com

Scott Baker (*Pro hac vice* to be filed, Colorado Bar
    No. 40007)
Robert Ziemian (*Pro hac vice* to be filed, Colorado
    Bar No. 37058)
Michael Goodman (*Pro hac vice* to be filed,
    Colorado Bar No. 50101)

HAYNES AND BOONE, LLP
1050 17th St., Suite 1800
Denver, Colorado 80265
Telephone: (303) 382-6228
Facsimile: (303) 382-6210
Email: scott.baker@haynesboone.com
robert.ziemian@haynesboone.com
michael.goodman@haynesboone.com

*Counsel for Plaintiff, Nite Ize, Inc.*